UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| VANCE EVERETT THUMM,<br><br>      Petitioner,<br><br> v.<br><br>JOSH TEWALT, IDOC Director,<br><br>      Respondent. | Case No. 1:19-cv-00389-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court is a Petition for Writ of Habeas Corpus filed by Idaho state prisoner Vance Everett Thumm, challenging Petitioner's state court conviction. *See* Dkt. 1. Respondent has filed a Motion for Partial Summary Dismissal, which is now ripe for adjudication. *See* Dkt. 20.

The Court takes judicial notice of the records from Petitioner's state court proceedings, which have been lodged by Respondent. Dkt. 21; *see* Fed. R. Evid. 201(b); *Dawson v. Mahoney*, 451 F.3d 550, 551 n.1 (9th Cir. 2006).

Having carefully reviewed the record, including the state court record, the Court finds that oral argument is unnecessary. *See* D. Idaho L. Civ. R. 7.1(d). Accordingly, the Court enters the following Order granting Respondent's Motion and dismissing the following claims with prejudice: Claims 1, 2, 4(b), 7(a), 7(b), 7(e), 8(b), 10, 11(a), and 12.

## BACKGROUND

The facts underlying Petitioner's conviction are set forth clearly and accurately in

*State v. Thumm*, 285 P.3d 348 (Idaho Ct. App. 2012). The facts will not be repeated here except as necessary to explain the Court's decision.

Following a jury trial in the Fourth Judicial District Court in Ada County, Idaho, Petitioner was convicted of aggravated battery, along with a persistent violator enhancement. *Id*. at 351. The conviction stemmed from the beating and stabbing of Devin Ohls in a motel room by multiple attackers. Specifically, Petitioner had "attacked Ohls, striking him with a closed fist several times in the head," and another assailant, Frankie Hughes, had "kicked Ohls and stabbed him in the buttock." *Id*. at 350–51. Yet another assailant, Chris Smith, pleaded guilty "to stabbing Ohls during the altercation." *Id*. at 354.

Petitioner was sentenced to a unified term of forty years in prison with fifteen years fixed. The Idaho Court of Appeals affirmed the conviction, and the Idaho Supreme Court denied review. *Id*. at 360; State's Lodging B-8.

Petitioner then filed a state post-conviction petition. The state district court summarily dismissed the petition. State's Lodging C-1 at 348–93. The Idaho Supreme Court retained the case and affirmed. That court denied Petitioner's petition for rehearing but issued a substitute opinion that did not change the result. *See Thumm v. State*, 447 P.3d 853 (Idaho Aug. 22, 2019), *withdrawing and superseding Thumm v. State*, 2019 WL 848061 (Idaho Feb. 22, 2019); State's Lodging D-9.

In the instant federal habeas corpus petition, Petitioner asserts the following claims:

Claim 1:    "The district court committed reversible error by denying motion for mistrial after one of the states [sic] witnesses referenced [Petitioner's] alleged gang affiliation." Dkt. 1 at 6.

Claim 2:        "The district court committed reversible error in concluding that if the defense called Chris Smith to testify then the state would be permitted to impeach his testimony with information that both [Petitioner] and Mr. Smith are alleged gang members from different gangs." *Id*. at 7.

Claim 3:        "[Petitioner's] due process rights were violated when the state introduced evidence that he invoked his fifth amendment rights to infer guilt during case in chief and closing argument." *Id*. at 8.

Claim 4:        "[Petitioner] was denied his constitutional right to a fair trial due to the serious and relentless acts of prosecutorial misconduct," in the following respects: (a) "appeal[ing] to jury's passions and prejudices"; (b) "misstat[ing] the reasonable doubt standard"; and (c) "elicit[ing] evidence that [Petitioner] invoked his fifth amendment rights to infer his guilt." *Id*. at 9.

Claim 5:        Cumulative error based on the errors identified in Claims 1 through 4. *Id*. at 10. The Court agrees with Respondent that Claim 5 should be construed as cumulative error based on the claims Petitioner raised on direct appeal.

Claim 6:        Ineffective assistance of counsel in the following respects: (a) trial counsel's conduct "regarding joinder of the trial with co-defendants"; (b) trial counsel's "failure to object to the hearsay statements of [Petitioner's] co-defendant being introduced in [Petitioner's] trial"; and (c) appellate counsel's failure "to raise this issue as fundamental error on direct appeal." *Id*. at 11.

Claim 7:        Ineffective assistance of trial counsel, based on "lack of preparation," in the following respects: (a) late disclosure of defense witnesses; (b) missing a "deadline to submit redacted audio tapes"; (c) "failing to timely file a motion to suppress the photo line ups"; (d) failing "to adequately meet, communicate, or prepare with [Petitioner] and fail[ing] to provide and/or review the discovery with him"; and (e) failing to prepare "for the testimony of Helen Fisher." *Id*. at 12.

Claim 8:        Ineffective assistance of trial counsel in the following respects: (a) failing "to oppose the proposed impeachment of witnesses by gang membership"; (b) failing to call witnesses; (c) "failing to object to testimony of Jeremy Steinmetz and … failing to impeach him"; (d) failing "to object to the prosecutions [sic] use of the term 'prison'"; (e) failing use fingerprint evidence that was "exculpatory[] [and] not incriminating"; (f) failing to object to prosecutorial misconduct; (g)

failing to impeach Frankie Hughes on the basis of bias; and (h) failing to impeach, "refresh," or "follow up" with detectives. *Id*. at 13.

Claim 9:       Violation of *Brady v. Maryland*, 373 U.S. 83 (1963), based on the state's "failure to timely disclose a fingerprint report. *Id*. at 14.

Claim 10:     Prosecutorial misconduct during closing argument in the following respects: (a) taking "advantage … of [the prosecutor's] own non-disclosure of the fingerprint evidence"; (b) making "disparaging comments about defense counsel and the defense"; (c) making "unsupported comments about the victim … being afraid of [Petitioner]"; (d) arguing "that Jeremy Steinmetz was afraid of [Petitioner]"; (e) "mischaracteriz[ing] significant evidence"; and (f) using inflammatory language. *Id*. at 15.

Claim 11:     Claim 11(a) asserts ineffective assistance of sentencing counsel. Claim 11(b) asserts ineffective assistance of direct appeal counsel for "failing to raise the *Bruton* issue, *Abel* issue, and *Brady* issue, and all instances of prosecutorial misconduct." *Id*. at 16.

Claim 12:     Cumulative error based on the errors identified in Claims 6 through 11. *Id*. at 17. The Court agrees with Respondent that Claim 12 should be construed as cumulative error based on the claims Petitioner raised on appeal from the dismissal of his post-conviction petition.

*See* Dkt. 11 at 2–4; *see also* Dkt. 20-1 at 6 n.3.

The Court previously reviewed the Petition and allowed Petitioner to proceed on his claims to the extent those claims "(1) are cognizable in a federal habeas corpus action, (2) were timely filed in this Court, and (3) were either properly exhausted in state court or subject to a legal excuse for any failure to exhaust in a proper manner." Dkt. 11 at 4.

Respondent now argues that Claims 1, 2, 10, and 12, as well as portions of Claims 4, 7, 8, and 11, must be dismissed because they are procedurally defaulted without legal excuse. For the reasons that follow, the Court agrees.

MEMORANDUM DECISION AND ORDER - 4

**DISCUSSION**

**1.      Standard of Law Governing Summary Dismissal**

The Rules Governing § 2254 Cases ("Habeas Rules") authorize the Court to summarily dismiss a petition for writ of habeas corpus when "it plainly appears from the face of the petition and any attached exhibits," as well as those records subject to judicial notice, "that the petitioner is not entitled to relief in the district court." Habeas Rule 4. Where appropriate, a respondent may file a motion for summary dismissal, rather than an answer. *White v. Lewis*, 874 F.2d 599, 602 (9th Cir. 1989).

**2.      Procedural Default Standards of Law**

A habeas petitioner must exhaust his or her remedies in the state courts before a federal court can grant relief on constitutional claims. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). To do so, the petitioner must invoke one complete round of the state's established appellate review process, fairly presenting all constitutional claims to the state courts so that they have a full and fair opportunity to correct alleged constitutional errors at each level of appellate review. *Id.* at 845. In a state that has the possibility of discretionary review in the highest appellate court, like Idaho, the petitioner must have presented all of his federal claims at least in a petition seeking review before that court. *Id.* at 847. "Fair presentation" requires a petitioner to describe both the operative facts and the legal theories upon which the federal claim is based. *Gray v. Netherland*, 518 U.S. 152, 162–63 (1996).

The mere similarity between a federal claim and a state law claim, without more,

does not satisfy the requirement of fair presentation. *See Duncan v. Henry*, 513 U.S. 364, 365-66 (1995) (per curiam). General references in state court to "broad constitutional principles, such as due process, equal protection, [or] the right to a fair trial," are likewise insufficient. *See Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir. 1999). For proper exhaustion, a petitioner must bring his federal claim before the state court by "explicitly" citing the federal legal basis for his claim. *Lyons v. Crawford*, 232 F.3d 666, 669 (9th Cir. 2000), *as amended*, 247 F.3d 904 (9th Cir. 2001).

When a habeas petitioner has not fairly presented a constitutional claim to the highest state court, and the state court would now refuse to consider it because of the state's procedural rules, the claim is said to be procedurally defaulted. *Gray*, 518 U.S. at 161-62. Procedurally defaulted claims include the following: (1) when a petitioner has completely failed to raise a claim before the Idaho courts; (2) when a petitioner has raised a claim, but has failed to fully and fairly present it as a *federal* claim to the Idaho courts; and (3) when the Idaho courts have rejected a claim on an adequate and independent state procedural ground. *Id.*; *Baldwin v. Reese*, 541 U.S. 27, 32 (2004); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

"To qualify as an adequate procedural ground, a state rule must be firmly established and regularly followed." *Walker v. Martin*, 562 U.S. 307, 316 (2011) (internal quotation marks omitted). That is, the state procedural bar must be one that is "'clear, consistently applied, and well-established at the time of the petitioner's purported default.'" *Martinez v. Klauser*, 266 F.3d 1091, 1093-94 (9th Cir. 2001) (quoting *Wells v. Maass*, 28 F.3d 1005, 1010 (9th Cir. 1994)). A state procedural bar can be considered adequate even if it is a

discretionary rule, and even though "the appropriate exercise of discretion may permit consideration of a federal claim in some cases but not others." *Beard v. Kindler*, 558 U.S. 53, 61 (2009). A state rule's "use of an imprecise standard … is no justification for depriving a rule's language of any meaning." *Walker*, 562 U.S. at 318 (internal quotation marks and alteration omitted).

A state procedural bar is "independent" of federal law if it does not rest on, and if it is not interwoven with, federal grounds. *Bennett v. Mueller*, 322 F.3d 573, 581 (9th Cir. 2003). A rule will not be deemed independent of federal law "if the state has made application of the procedural bar depend on an antecedent ruling on federal law such as the determination of whether federal constitutional error has been committed." *Id*. (internal quotation marks and alteration omitted); *see also Ake v. Oklahoma*, 470 U.S. 68, 75 (1985) (stating that "when resolution of the state procedural law question depends on a federal constitutional ruling, the state-law prong of the court's holding is not independent of federal law, and our jurisdiction is not precluded," and holding that a state waiver rule was not independent because, "[b]efore applying the waiver doctrine to a constitutional question, the state court must rule, either explicitly or implicitly, on the merits of the constitutional question").

Once the state sufficiently pleads the existence of an adequate and independent state procedural bar, the burden shifts to the petitioner to establish that the rule is not adequate or is dependent on federal law. "The petitioner may satisfy this burden by asserting specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule." *Bennett*, 322 F.3d

at 586. The ultimate burden to show that the procedural rule is adequate and independent, however, remains with the state.

### 3.    Claims 1, 2, 4(b), 7(a), 7(b), 7(e), 8(b), 10, 11(a), and 12 Are Procedurally Defaulted

i.    Claims 1 and 2 Were Raised in State Court Only as State Law Claims

On direct appeal, Petitioner argued that the trial court improperly denied Petitioner's motion for a mistrial after one of the state's witnesses referenced Petitioner's gang affiliation. Petitioner cited Idaho state court cases and Idaho Rules of Evidence 401 and 403. State's Lodging B-1 at 10–15. This claim is similar to Claim 1 as asserted in the Petition.

On direct appeal, Petitioner also challenged the trial court's ruling that, if the defense called Chris Smith as a witness, the state could impeach Smith with information that he and Petitioner were both gang members. Petitioner relied on Idaho Rules of Evidence 608(b) and 403, as well as on *United States v. Abel*, 465 U.S. 45, 49 (1984), in which the Supreme Court held that evidence of gang affiliation may be introduced as impeachment under the Federal Rules of Evidence if the evidence is "sufficiently probative of [a witness's] possible bias." *Id*. at 16–20. This claim is similar to Claim 2 as asserted in the Petition.

However, Petitioner did not argue to the Idaho appellate courts that Claims 1 and 2 violated his *federal* constitutional rights. Instead, Petitioner's only arguments in support of these claims were based on state law, particularly the Idaho Rules of Evidence.

It is true that Petitioner's state law arguments also relied on *United States v. Abel*, a

United States Supreme Court case. But that reliance does not constitute fair presentation of Claims 1 and 2 as federal constitutional claims. The *Abel* Court was analyzing the issue of gang affiliation pursuant to the Federal Rules of Evidence—which do not apply in Idaho state court and cannot be the basis of a claim under 28 U.S.C. § 2254. *See Abel*, 465 U.S. at 49. Therefore, even though the Idaho Court of Appeals applied the *Abel* framework, it did so because the court adopted that framework as the means to determine whether the evidence of gang affiliation was admissible under *Idaho* state law—specifically, the Idaho Rules of Evidence. As Respondent accurately puts it,

> [W]hile the *Abel* holding does not directly bind state courts' interpretation and application of their own evidentiary rules, its rationale and standards have been cited and utilized by state courts, including in Idaho. (State's lodging B-5, pp.7-8); *see also State v. Medina*, 909 P.2d 637, 642 (Idaho App. 1996). However, state courts which apply the rationale and standards set forth in *Abel* are still ultimately applying only their respective states' evidentiary rules, as the Idaho Court of Appeals did in this case.

Dkt. 20-1 at 14; *see also Meister v. Ramirez*, No. 1:19-CV-00173-CWD, 2020 WL 1932598, at *4 (D. Idaho Apr. 21, 2020) (unpublished) ("The [state appellate] brief's citation to United States Supreme Court precedent did not constitute the assertion of a federal claim—it was simply an acknowledgement that the Idaho courts have adopted the federal harmless error standard as applicable to state-law claims of 'objected-to error.'").

Therefore, because Petitioner raised Claims 1 and 2 in state court only as state law claims, those claims are procedurally defaulted.

ii.      Claims 4(b) and 8(b) Were Not Presented to the Idaho Supreme Court

a)      Claim 4(b)

On direct appeal, Petitioner raised several claims of prosecutorial misconduct. In his initial appellate brief, Petitioner included argument as to Claim 4(b), contending that the prosecutor misstated the reasonable doubt standard in closing argument. State's Lodging B-2 at 30–36.

However, after the Idaho Court of Appeals affirmed the conviction, Petitioner did not again raise Claim 4(b) in his brief in support of his petition for review. State's Lodging at B-7. Petitioner did argue several other prosecutorial misconduct claims to the Idaho Supreme Court, but not Claim 4(b). *Id*. at 38–42.

A petition for review in the Idaho Supreme Court is a required step in the exhaustion process in Idaho. *See O'Sullivan*, 526 U.S. at 847. Claim 4(b) was not presented in Petitioner's brief in support of review and, therefore, is unexhausted. Because it is now too late to raise it, Claim 4(b) is also procedurally defaulted.

Petitioner argues that he did, in fact, present Claim 4(b) in his brief in support of review. The opening sentence of that brief states, "Vance Thumm asks the Idaho Supreme Court to review the opinion of the Idaho Court of Appeals." State's Lodging B-7 at 1. Petitioner contends that this sentence sufficed as "a request for review of all claims and opinions[,] a review in its entirety." Dkt. 26 at 7.

Petitioner is mistaken. Fair presentation requires that, "for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts that entitle the petitioner

to relief" on that claim. *Gray*, 518 U.S. at 162–63. The sentence in Petitioner's brief seeking review of the court of appeals' opinion did not constitute fair presentation of Claim 4(b) because it included neither a factual description nor a legal reference.

Petitioner's request that the Idaho Supreme Court review the decision of the Idaho Court of Appeals was insufficient to fairly present Claim 4(b) to the Idaho Supreme Court. *See Ruiz v. Blades*, No. 1:17-CV-00273-REB, 2018 WL 4682304, at *4 n.3 (D. Idaho Sept. 28, 2018) (unpublished) ("The footnote in Petitioner's petition for review, stating that if the Idaho Supreme Court were to grant review, then it should also consider the mistrial claim, did not suffice to fairly present that claim because Petitioner did not—in fact—present any actual argument on that claim to the Idaho Supreme Court."). Therefore, Claim 4(b) is procedurally defaulted.

b)      *Claim 8(b)*

In Claim 8(b), Petitioner asserts that trial counsel rendered ineffective assistance by failing to call witnesses. Petitioner included this claim in his post-conviction petition. On appeal from the dismissal of that petition, Petitioner referenced Claim 8(b) when he quoted from the state district court's description of that claim: "failing to call as witnesses Ariel Carpenter, Chris Smith, Heather Barr, Petitioner, and Dr. Wasielewski." State's Lodging D-1 at 27 (quoting State's Lodging C-1 at 376).

However, Petitioner's postconviction appellate brief did not actually present any argument in support of Claim 8(b), and the state's response brief argued that the claim had been waived as a result. *See generally id.*; State's Lodging D-2 at 35–36. The Idaho Supreme Court addressed each of the ineffective assistance of counsel claims that

Petitioner had supported with argument in his brief. *See Thumm*, 447 P.3d at 860–69. However, the state supreme court did not address Claim 8(b).

This Court presumes that the Idaho Supreme Court declined to consider the claim because Petitioner's mere description of the state district court's ruling did not constitute argument on, and thus did not actually raise, that claim under the Idaho Appellate Rules. *See* Idaho App. R. 35(a)(6) ("The argument [in the appellant's brief] shall contain the contentions of the appellant with respect to the issues presented on appeal, the reasons therefor, with citations to the authorities, statutes and parts of the transcript and record relied upon."); *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018) (state may rebut presumption that unexplained affirmance relied on same grounds as lower court decision "by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as *alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed*) (emphasis added); *Harrington v. Richter*, 562 U.S. 86, 99 (2011) ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits *in the absence of any indication or state-law procedural principles to the contrary*.") (emphasis added).

Petitioner has not rebutted the presumption that the Idaho Supreme Court declined to address Claim 8(b) because it was procedurally barred. He contends that he raised Claim 8(b), when he petitioned the Idaho Supreme Court for rehearing, by stating, "Appellant seeks rehearing of the entire decision issued in this matter." State's Lodging D-7 at 1 (brief in support of petition for rehearing). However, this statement did not constitute fair

presentation of Claim 8(b) because that claim was not presented in Petitioner's initial appellate brief. Therefore, it necessarily could not be raised in the petition for rehearing. *See Johnson v. Bekins Moving & Storage Co.*, 389 P.2d 109, 117 (Idaho 1963) ("[A] contention cannot be considered when raised for the first time in a petition for rehearing.").

Because Petitioner did not present Claim 8(b) to the Idaho Supreme Court, and because he can no longer do so, Claim 8(b) is procedurally defaulted.

      iii.      <u>The Idaho Supreme Court Rejected Claims 7(a), 7(b), 7(e), 10, 11(a), and 12 on Adequate and Independent State Law Grounds</u>

          *a)*      *Claims 7(a), 7(b), and 7(e)*

In Claims 7(a), (b), and (e), Petitioner asserts that trial counsel rendered ineffective assistance by failing to timely disclose witnesses, by missing a deadline to submit redacted audiotapes, and by failing to adequately prepare for the testimony of Helen Fisher. These claims were raised in Petitioner's post-conviction petition, and the state district court rejected them. State's Lodging C-1 at 376–75.

However, on appeal from the dismissal of his post-conviction petition, Petitioner included references to Claims 7(a), (b), and (e) only in the description of the claim as set forth in the state district court's order. State's Lodging D-1 at 37–38. In the body of his opening appellate brief on Claim 7, Petitioner argued the merits only as to Claims 7(c) and 7(d)—failing to move to suppress photo lineups and failing to provide and review discovery. *Id*. at 38–39.

The Idaho Supreme Court declined to consider the merits of Claims 7(a), (b), and (e) because Petitioner had not supported these claims with cogent argument or authority:

> In his Appellant's Brief, [Petitioner] raised only the issues of
> failure to provide discovery and failure to timely move to
> suppress lineups [which correspond to Claims 7(d) and 7(c)],
> so only these issues will be considered here. *See Bach v.
> Bagley,* 148 Idaho 784, 790, 229 P.3d 1146, 1148 (2010) ("[I]f
> the issue is only mentioned in passing and not supported by
> any cogent argument or authority, it cannot be considered by
> this Court.").

*Thumm*, 447 P.3d at 864. In doing so, the Idaho Supreme Court applied a state procedural rule. *See Bach*, 229 P.3d at 1148; *State v. Zichko*, 923 P.2d 966, 970 (Idaho 1996).

Nearly 20 years ago, the Ninth Circuit held that this procedural rule—that Idaho appellate courts will not consider claims that are not supported with argument and authority in appellate briefing—is adequate and independent. *Zichko v. Idaho*, 247 F.3d 1015, 1021 (9th Cir. 2001). Therefore, Claims 7(a), (b), and (e) are procedurally defaulted.

### b)   Claim 10

In Claim 10, Petitioner asserts various instances of prosecutorial misconduct. Petitioner raised Claim 10's assertions in the state courts not on direct appeal, but instead in post-conviction proceedings.

The Idaho Supreme Court, on appeal from the denial of Petitioner's post-conviction petition, refused to consider any of the prosecutorial misconduct sub-claims in Claim 10 because the claims could have—and should have—been raised on direct appeal. *Thumm*, 447 P.3d at 426 ("[Petitioner] has made no showing that the first five instances of misconduct were unknown and could not have reasonably been known during the direct appeal, so these claims of prosecutorial misconduct are waived for purposes of the post-conviction petition.… However improper the statement [challenged in the sixth sub-claim

MEMORANDUM DECISION AND ORDER - 14

of prosecutorial misconduct in Claim 10] may have been, [Petitioner] could have raised this issue on direct appeal ….”). This procedural bar is found in Idaho Code § 19-4901(b), which provides as follows:

> Any issue which could have been raised on direct appeal, but was not, is forfeited and may not be considered in post-conviction proceedings, unless … the asserted basis for relief raises a substantial doubt about the reliability of the finding of guilt and could not, in the exercise of due diligence, have been presented earlier.

Petitioner has failed to meet his burden of showing that Idaho Code § 19-4901(b) was not “clear, consistently applied, and well-established” at the time of Petitioner's default. *Martinez v. Klauser*, 266 F.3d at 1093 (internal quotation marks omitted). Nor has Petitioner established that this state procedural rule is dependent on federal law. Finally, this Court has already determined that § 19-4901(b) is adequate and independent. *Sheahan v. Valdez*, No. 1:09-cv-00191, 2010 WL 3893934, at *3 (D. Idaho Sept. 27, 2010) (unpublished). Therefore, Claim 10 is procedurally defaulted.

Petitioner appears to contend that that the state supreme court improperly applied § 19-4901(b) with respect to Claim 10(a). Petitioner argues that this claim could not have been raised on direct appeal because the document on which the claim is based was not in the trial record. Dkt. 26 at 14. However, the Idaho Supreme Court rejected this same argument, holding that Petitioner could indeed have raised Claim 10(a) on direct appeal by challenging “the very exclusion of the document.” *Thumm*, 447 P.3d at 873–74.

Federal courts lack the authority to second-guess a state court's application of its own procedural bar in a particular case. *See Estelle v. McGuire*, 502 U.S. 62, 67–68

MEMORANDUM DECISION AND ORDER - 15

(1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Poland v. Stewart*, 169 F.3d 573, 584 (9th Cir. 1999) ("Federal habeas courts lack jurisdiction … to review state court applications of state procedural rules."); *Johnson v. Foster*, 786 F.3d 501, 508 (7th Cir. 2015) ("[A] federal habeas court is not the proper body to adjudicate whether a state court correctly interpreted its own procedural rules, even if they are the basis for a procedural default."). As a result, this Court cannot review the Idaho Supreme Court's conclusion, as a matter of state law, that Claim 10(a) could have been raised on direct appeal and was thus barred by § 19-4901(b).

c)      *Claims 11(a) and 12*

In Claim 11(a), Petitioner asserts that trial counsel rendered ineffective assistance during sentencing. In his post-conviction appellate brief, Petitioner referenced this claim when describing the state district court's ruling. State's Lodging D-1 at 39. However, the brief did not argue the merits of Claim 11(a). Instead, Petitioner argued only Claim 11(b), which alleges ineffective assistance of direct appeal counsel for "failing to raise the *Bruton* issue, *Abel* issue, and *Brady* issue, and all instances of prosecutorial misconduct." Dkt. 1 at 16.

The Idaho Supreme Court expressly declined to address Claim 11(a): "[Petitioner] makes no argument about sentencing counsel's specific deficiencies, other than a passing statement in a heading in his brief. Thus, we will not address this claim." *Thumm*, 447 P.3d at 869. Once again, the rule that Idaho courts will not consider issues unsupported by argument is an adequate and independent state procedural rule. *See Bach*, 229 P.3d at 1148;

*Zichko*, 247 F.3d at 1021. As a result, Claim 11(a) is procedurally defaulted.

Claim 12 is procedurally defaulted based on the same adequate and independent state procedural bar as Claim 11(a). Claim 12 asserts cumulative error based on the errors identified in Claims 5 through 11. Petitioner referenced this cumulative error claim on appeal from the dismissal of his post-conviction petition, but the Idaho Supreme Court held that the claim had been forfeited because it was not supported by specific argument:

> [Petitioner] appears to argue, by citing the cumulative error standard, that the accumulation of errors during trial, in the aggregate, were enough to have warranted a new trial. The intent may have been to argue that even if this Court were to determine that the errors listed above are not fundamental and/or are harmless, they are still errors and must be considered under the doctrine of cumulative error. ("[Petitioner] raises many errors with the first two being the most significant and the rest having a more cumulative effect."). *Except for the brief reference to the doctrine in the "standard of review" section of his brief, [Petitioner] failed to provide any specific argument about how the errors, when viewed altogether, produced a prejudicial effect, entitling him to relief. Thus, this argument can be summarily rejected*.

*Thumm*, 447 P.3d at 874 (emphasis added).

Though the state supreme court went on to reject Claim 12 on the merits, *see id.*, this does not erase the procedural default. *See Apelt v. Ryan*, 878 F.3d 800, 825 (9th Cir. 2017) ("[W]here a state court expressly invokes a procedural bar, the claim is defaulted, even though the state court goes on to discuss the merits of the claim."). Therefore, for the same reason as Claim 11(a), Claim 12 is also procedurally defaulted.

### 4.    Petitioner Has Not Established a Legal Excuse for the Default of His Claims

For the reasons discussed above, the Court concludes that Claims 1, 2, 4(b), 7(a),

7(b), 7(e), 8(b), 10, 11(a), and 12 are procedurally defaulted. However, that conclusion does not end the inquiry. If a petitioner's claim is procedurally defaulted, a federal district court can still consider the merits of the claim only if the petitioner meets one of two exceptions: (1) a showing of adequate legal cause for the default and prejudice arising from the default, or (2) a showing of actual innocence.[1] *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Schlup v. Delo*, 513 U.S. 298, 329 (1995).

Petitioner argues that Claim 10 satisfies the cause and prejudice exception. *See* Dkt. 26 at 14–15. Petitioner also asserts that all of his defaulted claims may be heard under the actual innocence exception. The Court disagrees.

### A.   *Petitioner Has Not Shown Cause and Prejudice to Excuse the Default of Claim 10*

Claim 10 and its sub-claims—all of which allege prosecutorial misconduct during closing argument—were defaulted because they were not raised on direct appeal. Petitioner now claims that direct appeal counsel rendered ineffective assistance in failing to raise the Claim 10 sub-claims as instances of prosecutorial misconduct.

To show "cause" for a procedural default, a petitioner must ordinarily demonstrate that some objective factor external to the defense impeded his or his counsel's efforts to comply with the state procedural rule at issue. *Murray*, 477 U.S. at 488. To show "prejudice," a petitioner generally bears "the burden of showing not merely that the errors [in his proceeding] constituted a *possibility* of prejudice, but that they worked to his *actual*

---

[1] Neither an assertion of cause and prejudice nor an assertion of actual innocence is an independent constitutional claim. Rather, these are federal procedural arguments that, if sufficiently established by a petitioner, allow a federal court to consider the merits of an otherwise procedurally defaulted constitutional claim.

and substantial disadvantage, infecting his entire [proceeding] with errors of constitutional dimension." *United States v. Frady*, 456 U.S. 152, 170 (1982).

Ineffective assistance of counsel ("IAC") may constitute cause for a default. For example, the failure on appeal to raise a meritorious claim of trial error, or the failure at trial to preserve a claim for appeal, can result in default of that claim. *See Edwards v. Carpenter*, 529 U.S. 446, 452 (2000) ("[I]n certain circumstances counsel's ineffectiveness in failing properly to preserve the claim for review in state court will suffice."). For IAC to serve as cause to excuse a default, that IAC claim must itself have been separately presented to the state appellate courts. *Id*.

To establish that counsel was constitutionally ineffective, a petitioner must make two showings. First, he must show that counsel's performance was deficient—that the attorney's representation fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). As for direct appeal counsel, effective legal assistance does not mean that appellate counsel must appeal every question of law or every nonfrivolous issue requested by a criminal defendant, and "[n]othing in the Constitution" requires "judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client." *Jones v. Barnes*, 463 U.S. 745, 754 (1983). A petitioner can show deficient performance of appellate counsel only when counsel failed to raise a nonfrivolous issue that "was clearly stronger than [the] issues that counsel did present." *Smith v. Robbins*, 528 U.S. 259, 288 (2000).

Second, a petitioner asserting cause and prejudice based on IAC "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. That is, the petitioner must show prejudice as a result of counsel's performance.

Here, Petitioner presented to the state courts a claim of ineffective assistance of direct appeal counsel for failing to argue the sub-claims in Claim 10. State's Lodging D-1. However, Petitioner has not established that direct appeal counsel performed deficiently in declining to raise those claims.

Here, Petitioner presented to the state courts a claim of ineffective assistance of direct appeal counsel for failing to argue the sub-claims in Claim 10. State's Lodging D-1. The Idaho Supreme Court found that Petitioner's appellate counsel made a strategic decision not to assert any of the Claim 10 sub-claims; that is, Petitioner's counsel made the tactical choice "to winnow what … appeared to be weaker issues." *Thumm*, 447 P.3d at 870. This is a factual finding to which this Court must defer unless Petitioner rebuts it by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). The Idaho Supreme Court went on to conclude that counsel did not perform deficiently.

Petitioner has not shown by clear and convincing evidence that appellate counsel's decision to omit Claim 10 was not tactical, nor has he shown that this tactical decision was objectively unreasonable. On direct appeal, counsel asserted several prosecutorial misconduct claims to the Idaho Court of Appeals, including the relatively strong claims that the prosecutor improperly used Petitioner's silence as evidence of guilt and appealed to the passions and prejudices of the jury. *See* State's Lodging B-2; *Thumm*, 447 P.3d at

870 ("As to the prosecutorial misconduct issues, Appellate counsel raised three issues in that regard: (1) improperly appealing to the jury's passions and prejudices; (2) misstating the reasonable doubt standard; and (3) using Thumm's pre-*Miranda* silence to imply Thumm's guilt."). Direct appeal counsel's decision not to raise the additional prosecutorial misconduct claims set forth in Claim 10 cannot be said to be deficient performance. In fact, "[e]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Jones*, 463 U.S. at 751–52. Petitioner has not shown that the sub-claims in Claim 10 were "clearly stronger" than the claims his appellate counsel chose to present. *Smith*, 528 U.S. at 288.

Because Petitioner has not shown that counsel performed deficiently in failing to raise Claim 10 on direct appeal, he cannot establish cause and prejudice to excuse the default of that claim.

### B.      *Petitioner Has Not Shown Actual Innocence to Excuse the Default*

If a petitioner cannot show cause and prejudice for his procedural default, he still can bring the claim in a federal habeas petition if he demonstrates that failure to consider the claim will result in a "fundamental miscarriage of justice." *Murray v. Carrier*, 477 U.S. at 496. This standard requires proof that a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Id.* Actual innocence in this context "means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998).

In asserting actual innocence, a petitioner must "support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). A procedurally defaulted claim may be heard under the actual innocence exception only if, "in light of all of the evidence, 'it is more likely than not that no reasonable juror would have found [the petitioner] guilty beyond a reasonable doubt.'" *United States v. Avery*, 719 F.3d 1080, 1083 (9th Cir. 2013) (quoting *Schlup*, 513 U.S. at 327). Stated another way, the petitioner must show that, but for the constitutional error, *every* reasonable juror would vote to acquit.

This is a particularly exacting standard, one that will be satisfied "only in the extraordinary case." *House v. Bell*, 547 U.S. 518, 538 (2006) (internal quotation marks omitted). Indeed, cases where the *Schlup* standard has been satisfied have "typically involved dramatic new evidence of innocence." *Larsen v. Soto*, 742 F.3d 1083, 1096 (9th Cir. 2013).

A court determining whether a petitioner has established actual innocence must consider "all the evidence, old and new, incriminating and exculpatory, admissible at trial or not." *Lee v. Lampert*, 653 F.3d 929, 938 (9th Cir. 2011) (en banc) (internal quotation marks omitted). An actual innocence analysis "requires a holistic judgment about all the evidence and its likely effect on reasonable jurors applying the reasonable-doubt standard"; in other words, the federal court must "make a probabilistic determination about what reasonable, properly instructed jurors would do." *House*, 547 U.S. at 538–39 (2006) (internal quotation marks omitted).

In evaluating an actual innocence gateway claim, a court has the discretion to assess the reliability and probative force of the petitioner's proffer, including making some credibility determinations, if necessary. *Schlup*, 513 U.S. at 331–332. Although "habeas petitioners who assert convincing actual-innocence claims [need not] prove diligence to cross a federal court's threshold," a court "'may consider how the timing of the submission and the likely credibility of a petitioner's affiants bear on the probable reliability of evidence of actual innocence.'" *McQuiggin v. Perkins*, 569 U.S. 383, 399 (2013) (quoting *Schlup*, 513 U.S. at 332) (alterations omitted).

Petitioner relies on the following in asserting that he is actually innocent: (1) a supposedly exculpatory fingerprint report that was disclosed to the defense but not presented at trial; (2) the trial and sentencing testimony of the victim; (3) Chris Smith's guilty plea and admissions that Smith assaulted Ohls, and (4) the testimony of Mike Nugent, Heather Barr, and Dr. Wasielewski, who could have been called as defense witnesses at trial.

### i.    Fingerprint Report

A week before trial, the prosecution disclosed to the defense a fingerprint report. The report established several things. First, Petitioner's fingerprints were found on a "broken Jose Quervo [sic] Tequila bottle w/ingredient label" found at the crime scene. Second, Petitioner was excluded as the source of fingerprints found on (a) "an empty Budweiser bottle without cap and sticky substance," (b) pieces from a broken Jose Cuervo tequila bottle, and (c) an unopened bottle of Olde English 800 Malt Liquor "w/reddish substance." And third, fingerprints on other pieces of evidence from the crime scene were

insufficient to identify. *See* State's Lodging C-1 at 202–03 (internal quotation marks omitted).

The defense objected to the admission of the report as untimely. The prosecution acknowledged that the disclosure was untimely and assured the court and defense counsel that it would not attempt to introduce the report at trial. The district court agreed and excluded the fingerprint report. *Id*. at 750–51.

Petitioner asserts that the fingerprint report is exculpatory, and thus supports his claim of actual innocence, because he was excluded as the source of the fingerprints found on bottles used as weapons in the assault. However, Petitioner was not charged with using *any* object to strike the victim. Instead, Petitioner was charged with using "force and/or violence" against the victim—or aiding and abetting others to do so—"by kicking and/or stomping and/or punching and/or stabbing" Devin Ohls. State's Lodging A-2 at 30–31; *see also id.* at 148 (Jury Instruction No. 1, describing the charged conduct as using force or violence against Ohls (or aiding and abetting others to do so) "by kicking and/or stomping and/or punching and/or stabbing" Ohls). Therefore, that Petitioner's fingerprints were not found on an empty beer bottle, broken pieces of a tequila bottle, or an unopened bottle of malt liquor does not itself constitute new, reliable evidence that Petitioner (1) did not hit or kick or punch the victim, or (2) did not aid and abet another in attacking Ohls.

ii.    Ohls's Testimony at Trial and Sentencing

The victim, Devin Ohls, testified at trial that he did not recognize Petitioner, that he did not remember seeing Petitioner in the motel room the night of the assault, and that if Petitioner had been there, Ohls would have seen him. State's Lodging A-10 at 515–16.

Ohls testified similarly at the sentencing hearing, stating that he recognized Petitioner only from the trial, that Petitioner was not involved in the assault, and that Petitioner was innocent. State's Lodging A-11 at 1292–93.

This evidence is not newly presented. Ohls testified at trial that Petitioner was not involved in the assault, but the jury did not believe him. As Respondent correctly points out, a surveillance video showed Petitioner at the motel the night of the assault, Petitioner's fingerprints were found on at least some evidence from the motel room, and other witnesses testified that Petitioner was present and participated in the assault. *See* State's Lodging C-1 at 202–03; A-10 at 346–48; A-11 at 712–14, 724, 853–55, 868. Thus, the jury had good reason to doubt Ohls's testimony about Petitioner, and that testimony is of little help to Petitioner in attempting to excuse procedural default.

iii.   Chris Smith's Admissions of Guilt and Guilty Plea

Before Petitioner's trial, Chris Smith, another of Ohls's assailants, pleaded guilty to stabbing Ohls. State's Lodging B-5 at 6. At trial, Detective Holland testified that Smith had admitted to punching and stabbing Ohls and that Smith stated he believed Petitioner "was being implicated [only] because he purchased the hotel room." State's Lodging A-11 at 989–90. Like Ohls's testimony that Petitioner was innocent, Smith's admissions are not new evidence of innocence, because the jury learned of that evidence through the detective's testimony. Further, Smith's admissions are not exculpatory as against Petitioner because the entire theory of the case was that there were multiple assailants who attacked Ohls in that motel room. Therefore, the fact that Smith pleaded guilty to stabbing Ohls and admitted that he participated in the attack does not tend to show that Petitioner is innocent.

iv.      Statements Made by Non-Testifying Witnesses

Petitioner contends that Mike Nugent, Heather Barr, and Dr. Wasielewski could have provided evidence in support his claim of factual innocence. None of these individuals testified at trial.

According to Petitioner, Mike Nugent could have testified that he had been in jail with Frankie Hughes, one of Ohls's assailants, when Hughes told Nugent that Petitioner did not commit the crime. Petitioner also claims Hughes told Nugent that detectives had offered Hughes "a deal to go free if he blamed petitioner." Dkt. 26 at 11–12.

Petitioner claims Heather Barr could have testified that she picked Petitioner up the night of the assault and that Petitioner did not have any blood on him at that time. *Id*. at 12.

Finally, Petitioner states that Dr. Wasielewski could have offered "exculpatory medical evidence that proved petitioner's innocence." *Id*. In his state post-conviction petition, Petitioner asserted that Dr. Wasielewski saw marks on Petitioner's knuckles two days before the attack on Ohls, thus providing an alternative reason for Petitioner's knuckles to be injured. *See* State's Lodging C-1 at 368.

None of this evidence is very significant. The evidence—potentially offered by a jailhouse informant, a person who did not see any blood on Petitioner, and a doctor who saw injuries to Petitioner's knuckles before the attack—is not the type of "dramatic new evidence" sufficient to establish actual innocence. *Larsen*, 742 F.3d at 1096. Barr's and Dr. Wasielewski's potential evidence is not particularly exculpatory—Petitioner could have assaulted Ohls, or aided and abetted that assault, without getting blood on himself; and, the fact that Petitioner had bruised knuckles before the attack does not mean Petitioner did not

participate in the attack. Finally, even if Petitioner had submitted a declaration by Nugent, which he has not, evidence offered by an inmate about statements supposedly made by another inmate is not especially reliable.

     v.     <u>Faced with All the Evidence, a Reasonable Juror Could Still Find Petitioner Guilty Beyond a Reasonable Doubt</u>

In evaluating whether Petitioner has established actual innocence, the Court must consider all of the evidence, whether it was presented at trial or not. Having done so, the Court concludes that Petitioner has not established, by a preponderance of the evidence, that every reasonable juror hearing that evidence would find him not guilty. Therefore, Petitioner has not established that he is excused from the procedural default of Claims 1, 2, 4(b), 7(a), 7(b), 7(e), 8(b), 10, 11(a), and 12.

## CONCLUSION

For the foregoing reasons, Claims 1, 2, 4(b), 7(a), 7(b), 7(e), 8(b), 10, 11(a), and 12 are procedurally defaulted, and Petitioner has not shown a legal excuse for the default. Therefore, Respondent's Motion for Partial Summary Dismissal will be granted, and those claims will be dismissed.

## ORDER

**IT IS ORDERED:**

1.     Respondent's Motion for Extension of Time (Dkt. 27) is GRANTED.

2.     Respondent's Motion to File Oversize Reply Brief (Dkt. 29) is GRANTED.

3.     Respondent's Motion for Partial Summary Dismissal (Dkt. 20) is GRANTED, and the following claims are DISMISSED with prejudice:

Claims 1, 2, 4(b), 7(a), 7(b), 7(e), 8(b), 10, 11(a), and 12.

4.    Respondent must file an answer to the remaining claims within 90 days of the date of this Order. Petitioner must file a reply (formerly called a traverse), containing a brief rebutting Respondent's answer and brief, which must be filed and served within 60 days after service of the answer and brief. Respondent has the option of filing a sur-reply within 14 days after service of the reply. At that point, the case will be deemed ready for a final decision on Petitioner's remaining claims.

DATED: October 27, 2020

David C. Nye
Chief U.S. District Court Judge